UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

                                        Case No. 07-26001

CHARLES BECKER and
MARY KAY BECKER,

                                        Chapter 11

          Debtors.

_____

MEMORANDUM DECISION DETERMINING
SECURED STATUS OF LOANS MADE BY THE PORTAGE COUNTY BANK
_____

PROCEDURAL HISTORY

The debtors, Charles and Mary Becker, filed a chapter 11 voluntary petition on August 1, 2007. On September 17, 2007, the debtors and The Portage County Bank entered into a stipulation whereby the parties agreed to the balances owing on various notes entered into prepetition, as well as the terms of monthly adequate protection payments. The stipulation was approved by the court on September 25, 2007. On July 1, 2008, and August 7, 2008, The Portage County Bank provided the debtors with written notices that they had defaulted under the terms of the previous stipulation by failing to make all of the required adequate protection payments.

At a September 4, 2008, hearing on the default, the debtors disputed the bank's loans were cross-collateralized. The debtors also initially opposed granting the bank relief from the automatic stay, but the parties eventually entered into another stipulation for relief and modification of the previous adequate protection order. On September 19, 2008, the bank was granted relief from the automatic stay as to certain property surrendered by the debtors and adequate protection payments were maintained on the property retained by the debtors.

Contemporaneous with the issues pertaining to the automatic stay, the bank opposed the

debtors' proposed disclosure statement. According to the bank, the disclosure statement did not adequately describe the cross-collateralization of the debtors' obligations.

Before the debtors could seek approval of their disclosure statement and confirmation of their plan, the parties agreed a resolution of the cross-collateralization issue was necessary. The Portage County Bank filed two briefs in support of cross-collateralization of its loans. Citizens Bank, which had also loaned the debtors funds subject to a mortgage on their homestead, filed a brief opposing the asserted cross-collateralization of the loans.[1]

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) & (K), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052.

## FACTUAL BACKGROUND

In the past fifteen years the debtors have been engaged in the business of acquiring, refurbishing, and renting out residential and commercial real estate. Additionally, the debtors continued to operate Miller Machine Products, a proprietorship generally managed by Charles Becker. (First Amended Disclosure Statement filed October 9, 2008, pp. 2-3).

On July 10, 2001, the debtors executed a $100,000.00 note and granted a mortgage against their home in favor of The Portage County Bank. That mortgage was recorded at the Marquette County Register of Deeds on July 20, 2001. The debtors mortgaged, conveyed and warranted to the bank:

in consideration of the sum of ONE HUNDRED THOUSAND AND NO/100 Dollars

---

[1]While the debtors have not briefed the issue, they have filed a complaint seeking a determination of the validity, priority and extent of the two banks' liens. The adversary proceeding has been scheduled for a preliminary pretrial in January 2009.

($100,00.00), loaned to or to be loaned to Charles D. Becker and Mary K. Becker ("Borrower," whether one or more), evidenced by Borrower's note(s) or agreement dated July 10, 2001, the real estate described below [the debtors' home], together with all privileges, hereditaments, easements and appurtenances, all rents, leases, issues and profits, all claims, awards and payments made as a result of the exercise of the right of eminent domain, and all existing and future improvements and fixtures (all called the "Property") to secured the Obligations described in paragraph 5 on the reverse side, including but not limited to repayment of the sum stated above plus certain future advances made by Lender.

. . .

5. Mortgage as Security. This Mortgage secures prompt payment to Lender of (a) the sum stated in the first paragraph of this Mortgage, plus interest and charges according to the terms of the promissory notes or agreement of Borrower to Lender identified on the reverse side, and any extensions or renewals or modifications signed by Borrower of said promissory notes or agreement, (b) to the extent not prohibited by the Wisconsin Consumer Act (i) any additional sums which are in the future loaned by Lender to Mortgagor, to any Mortgagor and another, to another guaranteed or endorsed by any Mortgagor primarily for personal, family or household purposes and agreed in documentation evidencing the transaction to be secured by this Mortgage, and (ii) all other additional sums which are in the future loaned by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor, (c) all interest and charges, and (d) to the extent not prohibited by law, all costs and expenses of collection or enforcement (all called the "Obligations"). This Mortgage also secures the performance of all covenants, conditions and agreements contained in this Mortgage. Unless otherwise required by law, Lender will satisfy this Mortgage upon request by Mortgagor if (a) the Obligations have been paid according to their terms, (b) any commitment to make future advances secured by this Mortgage has terminated, (c) Lender has terminated any line of credit under which advances are to be secured by this Mortgage, and (d) all other payments required under this Mortgage and the Obligations and all other terms, conditions, covenants, and agreements contained in this Mortgage and the documents evidencing the Obligations have been paid and performed.

(Real Estate Mortgage conveyed by Charles & Mary Becker to The Portage County Bank on July 10, 2001).

The Portage County Bank made four subsequent loans to the debtors; (1) $144,589.37 on April 28, 2003; (2) $59,805.34 on July 29, 2004; (3) $55,706.22 on November 11, 2004; and (4)

3

$27,100.20 on January 23, 2006. The first three business notes were secured by mortgages[2]

granted to the bank against real estate acquired by the debtor with proceeds from the loans. The

fourth business note was secured by a 2004 Chevrolet Truck.[3] The business notes provided the

following terms:

> 7. Security. This Note is secured by all existing and future security agreements and
> mortgages between Lender and Maker, between Lender and any indorser or guarantor of
> this Note, and between Lender and any other person providing collateral security for
> Maker's obligations, and payment may be accelerated according to any of them. Unless a
> lien would be prohibited by law or would render a nontaxable account taxable, Maker
> grants to Lender a security interest and lien in any deposit account Maker may at any time
> have with Lender. Lender may, at any time after an occurrence of an event of default,
> without notice or demand, set-off against any deposit balance or other money now or
> hereafter owed any Maker by Lender any amount unpaid under this Note.

(Business Notes entered into between Charles and Mary Becker and The Portage County Bank on

April 28, 2003, July 29, 2004, November 11, 2004, & January 23, 2006). While both Charles

and Mary signed the business notes dated April 28, 2003, and July 29, 2004, only Charles signed

the business notes dated November 11, 2004, and January 23, 2006.[4]

Each of the first three business notes was renewed and no additional funds were advanced

at the renewals:

Business Note dated April 28, 2003        $144,589.37

---

[2]The Portage County Bank asserts the first three business notes were all secured by purchase money mortgages. While secured by mortgages, Citizens Bank disputes that the July 29, 2004, and November 11, 2004, business notes were secured by *purchase money* mortgages. Whether they are or not is not relevant at this time.

[3]The business note dated January 23, 2006, lists a truck, Commercial Security Agreement and two Real Estate Mortgages as security.

[4]The November 11, 2004, note was signed by Charles, individually, and the January 23, 2006, note was signed by Charles, individually and as Vice President of Miller Machine Products, Inc.

4

| | |
|---|---|
| Business Note Renewal dated May 15, 2004 | $142,868.57 |
| Business Note Renewal dated May 15, 2004 | $140,504.94 |
| Business Note Renewal dated May 30, 2006 | $138,260.35 |
| | |
| Business Note dated July 29, 2004 | $ 59,805.34 |
| Business Note Renewal dated August 12, 2005 | $ 57,761.22 |
| Business Note Renewal dated August 24, 2006 | $ 55,511.47 |
| | |
| Business Note dated November 11, 2004 | $ 55,706.22 |
| Business Note Renewal dated December 6, 2005 | $ 54,681.61 |
| Business Note Renewal dated December 19, 2006 | $ 53,452.52 |

On November 22, 2004, Citizens Bank recorded a mortgage against the debtors' homestead in the amount of $77,980.00.

The proceeds from the sale of the collateral securing the four business notes are highly unlikely to satisfy the balances owed on the notes, hence this dispute regarding the priority of the two banks' mortgages.

ARGUMENT

The Portage County Bank argues the original mortgage, by its unambiguous terms, secured not only the $100,000 loan, but "certain future advances made by the Lender," as well. (Real Estate Mortgage conveyed by Charles & Mary Becker to The Portage County Bank on July 10, 2001). Similarly, the subsequent loans were "secured by all existing and future security agreements and mortgages between Lender and Maker." (Business Notes entered into between Charles and Mary Becker and The Portage County Bank on April 28, 2003, July 29, 2004, November 11, 2004, & January 23, 2006).

Because the first three subsequent loans were all secured by the original mortgage, and because each was made before the recording of Citizens Bank's mortgage, according to The Portage County Bank, all of the sums advanced by it have priority over Citizens Bank's lien.

5

Although the fourth subsequent loan was made after the recording of Citizens Bank's mortgage, it also has priority because the lien attached at the time of the original mortgage. *Capocasa v. First Nat'l Bank*, 36 Wis. 2d 714, 719, 154 N.W.2d 271, 274 (1967). While optional future advances made by the first mortgagee with actual knowledge of a second mortgage do not have priority over the second mortgage, The Portage County Bank asserts it had no such actual knowledge of Citizens Bank's mortgage when it entered into the fourth subsequent loan. *See Colonial Bank v. Marine Bank, N.A.*, 152 Wis. 2d 444, 448 N.W.2d 659 (1989); *First Interstate Bank of Wisconsin-Southeast v. Heritage Bank & Trust*, 166 Wis. 2d 948, 955, 480 N.W.2d 555, 558 (Ct. App. 1992).

Citizens Bank argues the four subsequent loans were not of the same class as the primary obligation on the debtors' homestead. *See In re Hill*, 210 B.R. 1016 (Bankr. E. D. Wis. 1997). The subsequent loans were clearly made for business purposes, while the primary obligation was made for personal purposes. The dragnet clause in the consumer loan instrument cannot cover subsequent indebtedness incurred primarily for business purposes unless there is clear evidence establishing a contrary intent. Because there is no evidence to establish the debtors and The Portage County Bank had an intent contrary to the clear language of the mortgage when they entered into the original loan, Citizens Bank contends the subsequent indebtedness was not secured by the debtors' homestead.

## DISCUSSION

As noted previously by this Court in *In re Hill*, 210 B.R. 1016, 1020-21 (Bankr. E. D. Wis. 1997), the validity of a dragnet or future advance clause is determined under Wisconsin

law.[5]  The state supreme court has recognized that a security agreement can secure antecedent or subsequent obligations, and the lien will attach at the time of the security agreement.  *Capocasa v. First Nat'l Bank*, 36 Wis. 2d 714, 154 N.W.2d 271 (1967).

Future advance provisions, therefore, will be enforced only to the extent that the future liabilities sought to be secured were within the contemplation of the parties.  *John Miller Supply Co. v. Western State Bank*, 55 Wis. 2d 385, 392, 199 N.W.2d 161, 164 (1972) (Uniform Commercial Code case).  *But see Capocasa*, 36 Wis. 2d at 724-27, 154 N.W.2d at 276-77 (explicitly rejecting the "contemplation of the parties" test for subsequent debts secured by a mortgage executed by joint mortgagors).  The supreme court has given further guidance:

> "The 'other indebtedness' secured by a mortgage may be either antecedent or subsequent. Where it is antecedent it must be identified in clear terms, and where it is subsequent, it must be of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred."

*John Miller Supply*, 55 Wis. 2d at 394, 199 N.W.2d at 165 (quoting 2 Gilmore, Security Interests in Personal Property, § 35.2).

Stated another way, "[t]he similarity between future debts contemplated and future debts incurred is what a court scrutinizes when analyzing subsequent debt cases."  *Schmitz v. Grudzinski*, 141 Wis. 2d 867, 875, 416 N.W.2d 639, 642 (Ct. App. 1987).  In this case, the "other indebtedness" purportedly secured by the mortgage is subsequent, as opposed to antecedent, indebtedness.  Thus, the subsequent liabilities of the debtors must be of the same class and relate to a similar course of financing and must fall within the expressed intent of the parties.  *John Miller Supply*, 55 Wis. 2d at 394-95, 199 N.W.2d at 165.

---

[5]As noted by Judge Martin, the applicable standard is not especially clear.  *In re James*, 221 B.R. 760 (Bankr. W.D. Wis. 1998).

Courts have been concerned about the potential for abuse if the future debts are unrelated to the current ones:

> The original basis for their concern was the ingenious but perhaps devious practice of some creditors who, having obtained a future-advances clause from the debtor, would then go around to the debtor's unsecured creditors, purchase their rights, and then argue that the purchases were future advances to the debtor and therefore secured. Not wanting to encumber his property further, or risk losing otherwise exempt property in bankruptcy ..., the debtor might have sought future credit only from lenders willing to lend on an unsecured basis, and the future-advances clause would foil him.

*Matter of Kazmierczak*, 24 F.3d 1020, 1021 (7th Cir. 1994) (citation omitted). Such a scheme is not alleged here.

In this case the debtors' July 10, 2001, mortgage encumbered their homestead "plus certain future advances made by Lender." The mortgage also secured "(i) any additional sums which are in the future loaned by Lender to Mortgagor, to any Mortgagor and another, to another guaranteed or endorsed by any Mortgagor primarily for personal, family or household purposes and agreed in documentation evidencing the transaction to be secured by this Mortgage, and (ii) all other additional sums which are in the future loaned by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor." (Real Estate Mortgage conveyed by Charles & Mary Becker to The Portage County Bank on July 10, 2001). Since the subsequent advances were not consumer loans, they would have to fall under the umbrella of "certain future advances" provided for by the mortgage, as well as be secured by "(ii) all other additional sums" loaned by the bank in the future.

Additionally, the subsequent business notes were "secured by all existing and future security agreements and mortgages between Lender and Maker." (Business Notes entered into between Charles and Mary Becker and The Portage County Bank on April 28, 2003, July 29,

8

2004, November 11, 2004, & January 23, 2006). Although the secured property specifically

listed in the subsequent notes did not include the debtors' homestead, this is not necessarily a

requirement. *See Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 451, 485 N.W.2d 426, 430 (Ct.

App. 1992) ("A real estate security agreement that gives a bank 'a continuing lien on the Property

to secure all ... future debts, obligations, interest and liabilities ... to Bank' is sufficient to cover

future advances, and it attaches to future notes even though the notes do not refer to the real

estate security agreement.").

For the subsequent debt to be secured by an earlier security agreement, it must also be "of

the same class as the primary obligation secured by the instrument and so related to it that the

consent of the debtor to its inclusion may be inferred." *John Miller Supply*, 55 Wis.2d at 394,

199 N.W.2d at 165. Wisconsin courts have provided little guidance as to what is considered a

"similar course of financing," *id.*, for the purposes of upholding dragnet provisions. In

*Capocasa*, the court pointed out various types of advance clauses which can serve a socially and

economically desirable purpose: construction or improvement loans with instalments to be

advanced as the work progresses; mortgages by way of indemnity for prospective indorsements,

guarantees, and accommodations of commercial paper to be issued by the mortgagor; fluctuating

current balances under lines of credit established with the mortgagee; and as security for a bond

issue, or a series of issues. *Capocasa*, 36 Wis.2d at 719 n. 1, 154 N.W.2d at 273 n. 1. This list

of circumstances in which dragnet clauses are accepted is, of course, not exhaustive, and none of

them fit the facts of this case.

A Tennessee bankruptcy court has considered the "same class" test and held that a future

advance clause in a consumer loan instrument could not extend to cover subsequent indebtedness

9

incurred by the debtor for a primarily business purpose unless there was clear evidence

establishing a contrary intent. *In re Johnson*, 9 B.R. 713, 715-17 (Bankr. M.D. Tenn. 1981). The

*Johnson* court determined that the "same class" test[6] should only be applied to "the extent

necessary to distinguish between consumer and business transactions." *Id*. at 716. In fact, the

court recognized that a future advance clause in a consumer loan instrument would cover any

"future indebtedness of a personal, family, or household nature." *Id*.

Likewise, the Arkansas Supreme Court in *Security Bank v. First Nat'l Bank*, 565 S.W.2d

623 (Ark. 1978), considered the class of the indebtedness when construing a dragnet clause in a

trust deed executed by a husband and wife on their home to secure a purchase money loan given

to them by a bank. The court held that the bank's subsequent loans to the husband individually

in connection with his business, secured by personal property used by the husband in his

business, in which transactions the wife did not join, were not covered by the trust deed, since

they were not of the same class as the indebtedness secured by the latter instrument. The court

accordingly reversed a lower court ruling that the bank had priority with respect to the husband's

individual obligations over the claim of a subsequent lienor to whom the husband and wife had

given a second mortgage on their home to finance certain improvements. In so doing, the court

relied on the rule that when a mortgage is given to secure specific debt, the security would not be

extended to debts subsequently incurred unless they were of the same class and so related to the

primary debt that the assent of the mortgagor would be inferred. *Id*. at 627; *see also Garrote v.*

*Ocean Bank*, 713 So. 2d 1095 (Fla. App. 1998) (dragnet clause in open first mortgage on

---

[6]The classification test was later repudiated by the Tennessee legislature; however, the court's analysis of what constitutes the "same class" is still sound. *See In re Phillips*, 161 B.R. 824, 827 (Bankr. W.D. Mo. 1993).

residential homestead property did not secure later-incurred debt that arose from homeowners' personal guarantees of business loans from same lender); *Brae Asset Fund, L.P. v. Kelly*, 223 B.R. 50 (D. Mass. 1998) (dragnet clause in residential purchase-money mortgage executed by chapter 7 debtor-husband and his nondebtor wife was not enforceable to make mortgage property stand as security for debtor-husband's subsequent guarantee of his business' separate indebtedness to same mortgagee).

I find no persuasive reason to hold that the catch-all phrase in the original home mortgage that, in addition to consumer debts, it secures "all other additional sums which are in the future loaned" by The Portage County Bank to the Beckers is sufficient to show that these subsequent business loans were intended by the parties as additional encumbrances on the Beckers' homestead. Intent must, of course, be determined by looking at the language of the agreements, and such intent cannot be inferred here. First, the Beckers' mortgage, which was entered into before any of the commercial debts at issue, only secures "certain future advances." Thus, by its terms it was not necessarily intended to secure *all* future advances, especially those of a different class, i.e., business loans. Second, the business notes were each secured separately by the property being acquired. If the parties contemplated that additional security was needed, it is likely the documents would have said so. Indeed, at least one obligation, the Note dated January 23, 2006, which lists the truck, Commercial Security Agreement, and two real estate mortgages as security, is quite specific as to the property securing the obligation, and the homestead is notable in its absence. The business notes were repeatedly renewed, so there were numerous opportunities to clarify what the security was for the business notes, and whether they included the homestead. Third, there was no contractual obligation on the part of The Portage County

Bank to make future advances. This might have indicated that later business dealings or other transactions were contemplated at the time of the original mortgage, and it could have put a junior secured lender, such as Citizens Bank, on notice that its position might be jeopardized by future advances. *See Colonial Bank v. Marine Bank, N.A.*, 152 Wis. 2d 444, 449, 448 N.W. 659, 661 (1989) (noting if the first mortgagee is contractually obligated to make the future advance, the advance takes its priority from the original mortgage). Taken as a whole, the court is satisfied that when the Beckers' mortgage was granted on their home, the parties did not intend to have it apply to future commercial loans.

Finally, I believe Wisconsin law supports denial of dragnet application of a catch-all provision in a home mortgage when the creditor seeks to have it apply to future business debts, or to a catch-all provision in a business note that does not specifically refer to a previous mortgage. *John Miller Supply*, 55 Wis. 2d at 394, 199 N.W.2d at 165, held that for subsequent debts to be subject to a prior security agreement, they must be of the same class and so related that their inclusion under the prior security agreement can be inferred. As Judge Martin stated in his excellent analysis of the issue in *In re James*, 221 B.R. at 762-63, this requires two separate determinations. Here, the home mortgage and business debts are not of the same class, and they are certainly not related to each other. They are not of the same class because the first is for a loan secured by the debtors' homestead, which is held for their personal use. The later debts were for their real estate business, and business debts are of a separate class from personal debts. *See In re Johnson*, 9 B.R. at 715-17. Also, even when debts are of the same class, such as the consumer car loan and charge card debts in *In re James*, they still must be somehow related to each other. This might be a more difficult determination in some instances where there are two

12

business debts or two consumer debts, but not in this case. There is no relation between the personal loan secured by the homestead and the subsequent business loans. Furthermore, the provision in the business notes that these notes were secured by "all existing and future security agreements and mortgages between Lender and Maker" does not identify the home mortgage in the "clear terms" required by *John Miller Supply* to encompass the earlier mortgage. Accordingly, the Beckers' home mortgage secures only the home loan taken out in 2001 and not subsequent business loans of The Portage County Bank.

CONCLUSION

The mortgage to The Portage County Bank executed by the debtors on July 10, 2001, does not secure subsequent business notes executed by the debtors to the same creditor.

A separate order consistent with this decision will be entered.

January 13, 2009

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court

13